IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 08-00739 SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR NEW TRIAL AND/OR |
| | ) | JUDGMENT OF ACQUITTAL |
| RAMIRO HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION
FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL**

I.       **INTRODUCTION.**

On February 1, 2012, Ramiro Hernandez was convicted by
a jury of conspiracy to distribute and posses methamphetamine,
possession of methamphetamine, and attempted possession of
methamphetamine.  He now seeks a new trial pursuant to Rule 33(a)
of the Federal Rules of Criminal Procedure.  In the alternative,
he seeks a judgment of acquittal pursuant to Rule 29(c) of the
Federal Rules of Criminal Procedure.

Hernandez argues that a new trial is warranted because
he was deprived of his Sixth Amendment right of confrontation
when, at trial, a Drug Enforcement Administration agent testified
about statements made by a witness who had refused to testify,
and when an expert witness for the United States did not answer a
question asked on cross-examination.  Hernandez argues that
acquittal is alternatively appropriate because the evidence
presented at trial was insufficient to sustain his conviction.

Hernandez raised each of these arguments at trial. For the same reasons this court rejected his arguments at trial, the court denies Hernandez's present motion.

## II.        FACTUAL BACKGROUND.

Hernandez was convicted of (1) conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers; (2) possession with intent to distribute of 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers; and (3) attempted possession with intent to distribute of 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers.

At trial, the United States presented evidence showing that Hernandez was involved in two shipments of methamphetamine, totaling twenty-eight pounds, from California to Hawaii. Law enforcement agents intercepted one of the shipments in Honolulu and arrested two men who were to receive the methamphetamine. While in custody, one of those men, Jose Perez, agreed to cooperate with the DEA and identified Hernandez as the source of the methamphetamine. At the DEA's request, Perez made three recorded phone calls to Hernandez.

The United States had also planned to call Raymond Villagomez as a witness at trial. After being charged with committing separate drug offenses in California, Villagomez,

seeking leniency, provided the DEA with statements directly implicating Hernandez in the methamphetamine shipments to Hawaii. Interviewed by DEA special agent Sean Zelka, Villagomez explained that he and Hernandez had orchestrated the methamphetamine shipments, and he recounted the events leading up to the shipments.

About two months after he was interviewed by Zelka, Villagomez ended his cooperation and informed the DEA that he would not testify against Hernandez at trial. He told Zelka that he had been threatened and was afraid. Despite being subpoenaed as a witness, Villagomez refused to testify at trial.

The United States filed a motion to limine seeking to introduce at trial Villagomez's statements implicating Hernandez, pursuant to Rules 804(a)(2) and 804(b)(6) of the Federal Rules of Evidence. Rules 804(a)(2) and 804(b)(6) permit the admission of a declarant's hearsay statement when the declarant is unavailable, the statement is being offered against a party, and that party caused or acquiesced in causing the declarant's unavailability. The United States argued that Hernandez had caused Villagomez to be unavailable by orchestrating the threats.

After holding a two-day evidentiary hearing, this court agreed with the United States that Hernandez had intentionally caused Villagomez to be unavailable. The court then permitted Zelka to testify about what Villagomez had told him regarding the

methamphetamine shipments. Zelka did not testify before the jury about the threats Villagomez said had been made. Hernandez argues that Zelka's testimony denied his Sixth Amendment right of confrontation.

Hernandez's defense at trial focused on the recorded phone calls from Perez. Hernandez argued that the United States failed to prove that he was the speaker on the other end of the line in the recorded phone conversations with Perez. An expert witness from the DEA, Special Agent Ryan Johnson, who regularly does voice identification analyses across the country, testified for Hernandez. Initially contacted by the United States, Johnson had performed pretrial spectrographic voice analyses of voice exemplars taken from Hernandez and of the recorded phone calls, and had concluded that the unidentified speaker on the phone calls was not Hernandez. The United States turned over this exculpatory evidence to Hernandez before trial. When Hernandez then listed Johnson as a defense witness, the United States moved to bar Johnson's testimony as unreliable. This court was unpersuaded by the United States on this point.

At trial, the United States called Dr. Hirotaka Nakasone, a senior scientist with the Federal Bureau of Investigation, as an expert witness to rebut Johnson's testimony. After reviewing the tests performed by Johnson, Nakasone concluded that the quality of the phone call recordings was too

poor to allow a meaningful comparison and that the voice
exemplars acquired from Hernandez were flawed.  He opined that
Johnson's conclusion that Hernandez's voice was not on the phone
calls was unwarranted.  On cross-examination, Nakasone was asked
whether certain samples taken from the voice exemplars and the
recorded phone calls were "similar" or "dissimilar."  Nakasone
declined to render the requested opinion, noting that the quality
of the recorded phone calls was insufficient to support an
opinion.  Hernandez argues that Nakasone's refusal to answer was
also a denial of his constitutional right of confrontation.

**III.    MOTION FOR NEW TRIAL.**

**A.    Rule 33(a) Legal Standard.**

Rule 33(a) of the Federal Rules of Criminal Procedure
provides: "Upon the defendant's motion, the court may vacate any
judgment and grant a new trial if the interest of justice so
requires.  If the case was tried without a jury, the court may
take additional testimony and enter a new judgment."  The burden
of justifying a new trial rests with the defendant, see United
States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989), and a
"motion for new trial is directed to the discretion of the
judge."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir.
1981); accord United States v. Mack, 362 F.3d 597, 600 (9th Cir.
2004) (reviewing the denial of a motion for new trial under Rule
33(a) under an abuse of discretion standard).  "A district

court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal," United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992), as a new trial may be granted by the district court when the "interest of justice so requires." United States v. Moses, 496 F.3d 984, 987 (9th Cir. 2007) (quoting Fed. R. Crim. P. 33(a)).

## B.  Analysis.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  "Witnesses" as referred to in the Confrontation Clause include not only witnesses testifying in court, but also certain out-of-court declarants.  Ponce v. Felker, 606 F.3d 596, 599 (9th Cir. 2010) (citing Crawford v. Washington, 541 U.S. 36, 50-51 (2004)). Thus, the Confrontation Clause generally requires that a defendant have an opportunity to confront anyone whose statements will be used against the defendant.

The Supreme Court has recognized that a defendant can forfeit his or her right of confrontation by procuring the unavailability of a witness.  Davis v. Washington, 547 U.S. 813, 833 (2006) ("[O]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."). The so-called "forfeiture by wrongdoing" exception is codified as

a hearsay exception in Rule 804(b)(6) of the Federal Rules of Evidence. Rule 804(b) provides: "The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness: . . . (6) A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

When a defendant's right of confrontation is at stake, the "forfeiture exception applies only if a defendant specifically intended to prevent the witness from testifying." Ponce, 606 F.3d at 597 (citing Giles v. California, 554 U.S. 353 (2008)).

### 1. Villagomez's Statements.

With respect to the admission of Villagomez's statements, Hernandez first argues that the United States did not demonstrate, and this court never determined, that Villagomez was unavailable. The court disagrees.

This court expressly referred to Villagomez's unavailability in the course of examining Hernandez's role in procuring it. See Transcript of Proceedings on January 20, 2012, ("Transcript 2") at 158:7-10, ECF No. 404 ("So I start with the finding that Mr. Villagomez was indeed afraid. So then the question is whether Mr. Hernandez procured Mr. Villagomez's fear, thus making him unavailable for testimony here.").

7

Under Rule 804(a)(2), an "unavailable" declarant is one who "refuses to testify about the subject matter despite a court order to do so." Villagomez refused to testify in court despite this court's order that he do so. Admittedly, fear in light of having been threatened was not the only ground on which Villagomez refused to testify. Villagomez also asserted his Fifth Amendment right not to incriminate himself. However, he made it clear that, even if his Fifth Amendment concerns were addressed (by a grant of immunity or otherwise), fear would still cause him to disobey a court order to testify. Indeed, not all of the questions he declined to answer were incriminating. Concluding that fear was driving his refusal, the court ordered him to respond to certain questions. He refused to answer. See Transcript of Proceedings on Jan. 19, 2012, ("Transcript 1") at 5-54, ECF No. 403. He was, unequivocally, unavailable under Rule 804(b).

Hernandez next argues that Villagomez's out-of-court statements did not bear "indicia of reliability." In Ponce, the Ninth Circuit explained: "For many years, the Supreme Court approved of the admission of unconfronted out-of-court statements if they bore adequate 'indicia of reliability,' and such indicia were presumed if 'a firmly rooted hearsay exception' applied." 606 F.3d at 600 (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)). "However, in Crawford, the Court rejected the Ohio v.

_Roberts_ approach." _Id._ In _Crawford_, 541 U.S. at 62, the Supreme Court stated: "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability."

It thus appears that a court need not find "indicia of reliability" in the context of Rule 804(a)(2). _See_ _Pescador v. Scribner_, 2012 WL 907230, at *8 n.10 (C.D. Cal. Mar. 6, 2012) ("As both parties note, _Crawford_ overruled the former 'indicia of reliability' rule of _Ohio v. Roberts_.") Hernandez points to no case following _Crawford_ in which a court was required to find "indicia of reliability" in connection with a "forfeiture by wrongdoing." Accordingly, even assuming Villagomez's statements did not bear indicia of reliability, Hernandez does not demonstrate that its failure to do so warrants a new trial.

Hernandez also takes issue with the court's conclusion that Hernandez intended to prevent Villagomez from testifying. He argues that (1) the court improperly applied the preponderance of the evidence standard and should have applied the clear and convincing evidence standard, and (2) the United States failed to show by even a preponderance of the evidence that Hernandez acted with the requisite intent. The court was unpersuaded at trial and remains unpersuaded.

In _Davis v. Washington_, the Supreme Court declined to state the standard of proof applicable to the "forfeiture by wrongdoing" exception when it is used to overcome a defendant's constitutional right of confrontation.  The Court stated: "We take no position on the standards necessary to demonstrate such forfeiture, but federal courts using Federal Rule of Evidence 804(b)(6), which codifies the forfeiture doctrine, have generally held the Government to the preponderance-of-the-evidence standard."  547 U.S. at 834 (citing _United States v. Scott_, 284 F.3d 758, 762 (7th Cir. 2002)).  In _Ponce_, 606 F.3d at 602, the Ninth Circuit recognized that the Supreme Court "suggested that the Federal Rules of Evidence might describe the contours of the [forfeiture by wrongdoing] exception" and quoted _Davis_.  The Ninth Circuit did not set forth the applicable standard.

After _Davis_, other circuits have also declined to explicitly set forth the applicable standard.  _See_ _United States v. Baskerville_, 448 Fed. Appx. 243, 250 n.4, 2011 WL 4850257, at*6 n.4 (3d Cir. 2011) ("[T]his Court has yet to decide the appropriate evidentiary standard for admitting statements pursuant to [Rule] 804(b)(6).  We decline to decide that issue here.  Under either a clear and convincing evidence standard or a preponderance of the evidence standard, the Government's showing sufficed.").  Some circuits have affirmed district courts that have applied the preponderance standard, suggesting without

expressly deciding that a preponderance of the evidence standard applies.  See United States v. Vallee, 304 Fed. Appx. 916, 921, 2008 WL 5411079, at *2 (2d Cir. 2008); United States v. Stewart, 485 F.3d 666, 671-672 (2d Cir. 2007); United States v. Johnson, 495 F.3d 951, 972 (8th Cir. 2007); United States v. Montague, 421 F.3d 1099, 1103 (10th Cir. 2005).

The Eleventh and Sixth Circuits have given stronger indications that a preponderance of the evidence standard applies.  In Hodges v. Attorney General, Florida, 506 F.3d 1337, 1345 n.1 (11th Cir. 2007), the Eleventh Circuit, in a footnote, stated:

> In Thevis we held that for purposes of the waiver or forfeiture doctrine the standard of proof for establishing that the defendant had murdered the victim is clear and convincing evidence. [United States v. Thevis, 665 F.2d 616, 631 (5th Cir. Unit B 1982).]  We have since recognized that part of Thevis was superseded by Fed. R. Evid. 804(b)(6) so that the standard is now proof by a preponderance of the evidence. [United States v. Zlatogur, 271 F.3d 1025, 1028 (11th Cir. 2001]; see also Davis, 126 S.Ct. at 2280 (not taking a position on the evidentiary standard but noting that federal courts apply a preponderance of the evidence standard, and the tendency in state courts is to do the same).

However, the Eleventh Circuit continued:  "In this case, whether the facts used to attribute the witness' absence to the defendant's wrongdoing must be proven by clear and convincing evidence or only a preponderance is irrelevant."  Id.  By the

time the hearsay was admitted, "it had been established beyond a reasonable doubt that [the defendant] was responsible for the declarant being absent, because he had been convicted of murdering her." Id.

In United States v. Parks, 278 Fed. Appx. 527, 534, 2008 WL 2091427, at *6 (6th Cir. 2008), the Sixth Circuit, in an unpublished decision, noted that the Supreme Court in Davis had recognized that federal courts generally required a preponderance of the evidence, as did courts in the Sixth Circuit. The Sixth Circuit then applied that standard, ultimately concluding that it was "questionable" whether the defendant had prevented a witness from testifying. Id.

Although Hernandez asserts that this court should have required the United States to come forward with clear and convincing evidence, the cases he cites do not support his position. He first cites United States v. Wade, 388 U.S. 218, 239-40 (1967), for the proposition that "a waiver of a Sixth Amendment right going to the reliability of evidence can only be found by a standard of clear and convincing evidence." Def.'s Mot. for New Trial and/or Mot. for J. of Acquittal, Feb. 2, 2012, at 11, ECF No. 402. Wade, however, involved the Sixth Amendment right to counsel, not the right of confrontation. Id. at 223-24. And the Supreme Court did not actually apply the clear and convincing standard to a determination of whether the defendant

12

had waived his Sixth Amendment right to counsel. The issue before the Court instead involved a challenge to a lineup, which was unconstitutional because the defendant had been deprived of his right to counsel in connection with the lineup. Id. at 228-39. Although evidence of the lineup was not introduced at trial, trial witnesses who made in-court identifications of the defendant had seen the lineup. The Supreme Court considered whether the Fifth Circuit had erred in ordering a new trial as the remedy. The Court said, "We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." Id. at 240. In other words, once a constitutional violation was shown, the United States had to show by clear and convincing evidence that the introduction of evidence possibly tainted by that violation was harmless error. Id. at 242. This is not a situation analogous to "forfeiture by wrongdoing."

The second case Hernandez relies on, Thevis, 665 F.2d at 629-31, indeed held that clear and convincing evidence is necessary to show that a defendant had waived his or her right of confrontation. However, as expressly held in Zlatogur, 271 F.3d at 1028, that case was overruled by Rule 804(b)(6). The 1997 advisory committee note to that rule states: "The usual Rule

104(a) preponderance of the evidence standard has been adopted in light of the behavior the new Rule 804(b)(6) seeks to discourage."

Finally, the third case Hernandez cites, <u>United States v. Mastrangelo</u>, 693 F.2d 269, 273 (2d Cir. 1982), actually held that the appropriate burden of proof was a preponderance of the evidence when a defendant's alleged waiver of his or her right of confrontation by misconduct was in issue. Hernandez thus does not establish that case authorities require application of a clear and convincing evidence standard.

Hernandez also fails to demonstrate that this court lacked a preponderance of the evidence showing that Hernandez intentionally caused Villagomez to be unavailable. This court relied on circumstantial evidence in making its ruling. <u>See, e.g.</u>, <u>Stewart</u>, 485 F.3d at 671 (holding that the United States could use circumstantial evidence to show the defendant's involvement of the murder of a witness).

At the motion in limine hearing, this court heard testimony from a number of individuals. Agent Zelka testified about conversations he had had with Villagomez and his wife, Yareth Villagomez, in which Villagomez and his wife stated that they had been warned by people associated with Hernandez not to testify against Hernandez. <u>See</u> Transcript 2 at 39-141. Those conversations formed the basis of a DEA report prepared by Zelka,

which Zelka reviewed while on the stand. Zelka testified that Villagomez had been contacted by telephone when he failed to appear at a scheduled meeting with his attorney, Zelka, and others. Id. at 55. On a speakerphone, Zelka heard Villagomez explain that he had been threatened by family members of, and others associated with, Hernandez. Id. 56:24 - 57:2. He said that he had been involved in an altercation at a bar, kicked out of the bar because of the altercation, then confronted by several Hispanic males, some of whom had brandished firearms. Id. at 57:20-25. Villagomez resolved the situation by telling them he would not testify against Hernandez. Id. at 58:21-22.

After the phone conversation, Zelka went to Villagomez's home. Id. at 60:24 - 61:3. When Yareth started to provide additional information, Villagomez appeared uncomfortable. Id. at 75:19-23. Yareth told Zelka that the altercation had begun at a bar called Neil's Lounge in Indio, California, where the Villgomezes were seen by one of Hernandez's sisters. Id. 73:4-5. Yareth told Zelka that, at Neil's Lounge, Hernandez's sister made a phone call. Id. at 76:21 - 77:3. Yareth and Villagomez were asked to leave the bar by a security guard, and, a short distance from the bar, were confronted by several armed Hispanic men. Id. at 77-78. She said that Villagomez was called a "snitch." Id. at 74:22.

Mike Reyes, a security guard at Neil's Lounge, gave corroborating testimony at the hearing before this court, identifying photographs of two of Hernandez's sisters as depicting regulars at Neil's Lounge. Id. at 18. He recalled seeing them at the bar sometime during the month the incident occurred. Id. at 18:20-24. He also identified pictures of Villagomez and Yareth, saying he had escorted them out because they were arguing with Hispanic females. Id. at 8:10-24; 11:23 - 13:5.

Kenneth Baker, Villagomez's attorney, testified before this court regarding the speakerphone conversation with Villagomez. See Transcript 1 at 125-127.

This court also observed, and found genuine, the fear expressed by Villagomez when he took the stand and refused to testify. Villagomez said that he was refusing to testify because he had been threatened and was afraid. Id. at 31:16-19; 38:5-8. He said he "wants to live." Id. at 51:17. He continued, "I have a family. You know, I'm married and have four children . . . . I'm fearful." Id. at 51:17-18, 51:21.

The court also had before it evidence that Hernandez and some of his relatives were involved with violent activities. A California law enforcement officer had indicated during trial (but out of the jury's hearing) that Hernandez had bragged about being a member of the Mexican mafia, and the court had evidence

about Hernandez's alleged family connections to crime and
violence.

In addition, this court, as the factfinder, observed
that Hernandez repeatedly nodded his head when Villagomez refused
to answer questions, as if indicating that Villagomez was giving
correct responses.  <u>See</u> Transcript 2 at 161:23 - 162:22.

Putting together the evidence before it, this court
concluded that a preponderance of the evidence indicated that
Hernandez, or someone acting on his behalf, had acted with the
specific intent of procuring the unavailability of Villagomez as
a trial witness.  Although lacking direct evidence that Hernandez
had orchestrated the threat against Villagomez, the court noted
that Villagomez's identity as a witness was likely communicated
by Hernandez or someone he directed to act for him to his sister.
Villagomez's cooperation with the United States was not the kind
of thing the sister, who does not live in Hawaii, was likely to
have known otherwise.  There was no evidence that law enforcement
officers had disclosed that Villagomez would be testifying, and
the court is unaware of any press reports regarding that subject
before trial.  Although, as Hernandez points out, court
proceedings and many court documents are available to the public,
no one said that Hernandez's sister had sat in the gallery of the
courtroom during any proceeding in this action, and there was no
indication that she had used the court's electronic filing

system.  The court ruled at the motion in limine hearing and maintains now that the nature of the information (that Villagomez was cooperating with the United States against Hernandez), as well as the nature of the people with whom Villagomez and Yareth had altercations, supports the conclusion that Hernandez was involved in getting that information to people for the purpose of having them intimidate Villagomez.  <u>See</u> Transcript 2 at 161:18-22.

A preponderance of the evidence showed that Hernandez forfeited his right of confrontation by intentionally procuring Villagomez's unavailability.  Hernandez does not show that the evidence was insufficient and thus does not meet his burden on a motion for a new trial.

Finally, Hernandez argues that this court erred by permitting Zelka to paraphrase what Villagomez had allegedly told him.  Hernandez argues that Zelka's paraphrasing cannot be considered Villagomez's "statements."  Hernandez, however, points to no authority stating that statements made by an unavailable witness must be verbatim, rather than summarized by an agent to whom they were made.  Paraphrases are routinely permitted elsewhere.  <u>See</u> <u>United States v. Carson</u>, 455 F.3d 336, 363 n.22 (D.C. Cir. 2006) (admitting statements of an unavailable co-conspirator that were made to an FBI agent).

The court concludes the admission of Villagomez's statements is not a reason a new trial should be ordered.

## 2. Nakasone's Testimony.

The court is not persuaded that Hernandez was denied his right to confront Nakasone. On cross-examination, Hernandez asked Nakasone to compare samples of Hernandez's voice exemplars to samples from the recorded phone calls, and to give his opinion as to whether those pairs were "similar" or "dissimilar." Hernandez maintains that a finding that they were dissimilar would have supported Johnson's conclusion that the voice on the recorded phone calls did not belong to Hernandez.

Hernandez was not entitled to such an opinion from Nakasone. At the hearing, this court declined to order Nakasone to proffer his opinion as to whether the samples were similar and denied Hernandez's motion to strike Nakasone's testimony. The court said that it could not compel an expert to give an opinion. Had Nakasone testified on direct that he concluded, based on his own comparisons, that Hernandez was the speaker on the phone calls, Hernandez may have been entitled to have Nakasone answer questions based on those comparisons. But Nakasone was introduced as an expert witness to impeach Johnson, not to testify about whether Hernandez was indeed the speaker on the phone calls. All questions asked by the Untied States on direct examination were directed at the reliability of Johnson's

results.  Nakasone did not opine about whether Hernandez's voice was on the recorded phone calls.

Nakasone testified that he would not make the comparison requested by Hernandez for two reasons.  First, he felt that the phone calls were of insufficient quality to allow a voice comparison.  Second, FBI policy prohibited FBI scientists from doing in-court voice identifications using the techniques used by Johnson, which the FBI considers unreliable.  Hernandez points to no authority establishing that a defendant is deprived of a right of confrontation when an expert witness does not agree to give an opinion on a new subject while on the witness stand. Nakasone answered cross-examinations questions going to the opinions he had provided during his direct examination. Hernandez does not show that Nakasone's refusal to render an additional opinion as to whether the voice in the exemplars was similar or dissimilar to the voice in the phone calls violated Hernandez's right to confront Nakasone.

Hernandez fails to show that the interests of justice warrant the granting of a new trial.  The court DENIES the motion for a new trial.

IV.	**MOTION FOR JUDGMENT OF ACQUITTAL.**

Rule 29(a) requires this court to grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  On a motion for judgment

of acquittal under Rule 29(a), this court must view the evidence in the light most favorable to the United States, deciding whether a rational jury could have found the defendant guilty beyond a reasonable doubt.  See <u>United States v. Hazeem</u>, 679 F.2d 770, 772 (9th Cir. 1982).  <u>See also</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) ("when deciding a motion based on alleged insufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); <u>United States v. Disla</u>, 805 F.2d 1340, 1348 (9th Cir. 1986) ("A conviction is supported by the evidence if, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences, there was relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt"); <u>United States v. Cusino</u>, 694 F.2d 185, 187 (9th Cir. 1982).

Hernandez argues that the voice identification analysis conducted by Johnson establishes beyond a reasonable doubt that Hernandez was not the speaker on the recorded phone calls.  The court disagrees.  First, the testimony of Nakasone called Johnson's analysis into question and could have caused a rational jury to discount Johnson's analysis.  Second, even without Nakasone's testimony, the jury could have rejected Johnson's

opinion. For example, the jury, upon listening to the voice exemplars, which indisputably contained Hernandez's voice, could have concluded that Hernandez was deliberately flouting Johnson's instructions to try to replicate the way things were said on the phone recordings. In addition, other evidence tied Hernandez to the methamphetamine shipments, including previous phone calls between Perez and Hernandez, a witness's testimony that Hernandez taught him to hide drugs inside a vehicle using the same method used in this case, and Villagomez's statements. Although Hernandez argues that Villagomez's statements and Nakasone's testimony should be stricken because Hernandez was unable to confront those witnesses, his arguments in that regard are unpersuasive. A rational jury could have found Hernandez guilty beyond a reasonable doubt. Hernandez's motion for judgment of acquittal is DENIED.

## V. CONCLUSION.

The court DENIES Hernandez's motion for a new trial and motion for judgment of acquittal.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 3, 2012.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

United States v. Hernandez; Crim. No. 08-00739 SOM; ORDER DENYING DEFENDANT'S MOTION
FOR NEW TRIAL AND/OR JUDGMENT OF ACQUITTAL.