IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CRIM. NO. 08-00739 (01) SOM |
| | ) | CIV. NO. 18-00287 SOM/RT |
| Plaintiff, | ) | |
| | ) | SECOND SUPPLEMENT TO ORDER |
| vs. | ) | DENYING PETITION UNDER 28 |
| | ) | U.S.C. § 2255, DENYING |
| RAMIRO HERNANDEZ (01), | ) | REQUEST FOR AN EVIDENTIARY |
| | ) | HEARING, AND DENYING |
| Defendant. | ) | CERTIFICATE OF APPEALABILITY |
| _____ | ) | |

**SECOND SUPPLEMENT TO ORDER DENYING PETITION UNDER
28 U.S.C. § 2255, DENYING REQUEST FOR AN EVIDENTIARY
HEARING, AND DENYING CERTIFICATE OF APPEALABILITY**

**I.    INTRODUCTION.**

On December 31, 2018, this court denied Defendant Ramiro Hernandez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, denied his request for an evidentiary hearing, and declined to issue a certificate of appealability.  Because of the volume of issues Hernandez raised in his § 2255 motion, the court invited Hernandez to identify any ground for relief raised in his motion that he thought this court had failed to address in its order, informing him that any issue not so identified would be deemed automatically waived.  *See* ECF No. 630.

On January 11, 2019, Hernandez indicated that this court had failed to adjudicate three issues: 1) whether appellate counsel Deanna Dotson had rendered ineffective assistance of counsel by failing to raise a California wiretap issue on appeal; 2) whether this court had erred in sentencing Hernandez to 300

months; and 3) whether appellate counsel Pamela Tower had rendered ineffective assistance of counsel by failing to obtain a forensic analysis of a tape recording to determine whether it had been altered. With the exception of these three issues and any issue discussed in this court's earlier order, Hernandez has waived all other issues that he may have asserted in his § 2255 motion. *See* ECF No. 630.

The court already denied the § 2255 motion to the extent it was based on the second and third identified issues. *See* ECF No. 634. With respect to the first issue, the court requested supplemental briefing. *Id.* Having received and considered that briefing, the court continues to deny the § 2255 motion and the accompanying request for an evidentiary hearing, and continues to decline to issue a certificate of appealability.

**II.     ANALYSIS.**

Hernandez claims that his second appellate counsel, DeAnna S. Dotson, was ineffective in failing to raise a state wiretap issue on appeal. *See Hurles v. Ryan*, 752 F.3d 768, 785 (9th Cir. 2014) ("A criminal defendant enjoys the right to the effective assistance of counsel on appeal."). In its earlier order of December 31, 2018, this court rejected the assertion that Pamela O'Leary Tower, Hernandez's first appellate counsel, had been ineffective in failing to raise the California wiretap

issue. This court noted that Hernandez had sought suppression of the wiretap evidence before this court, which this court had denied. *See* ECF Nos. 246, 323, 325. This court ruled that Hernandez had failed to demonstrate that Tower was objectively unreasonable in choosing not to raise the issue again on appeal during the time she represented Hernandez. The court additionally notes that Tower no longer represented Hernandez when he filed his opening brief on appeal.

Hernandez now says this court failed to rule on whether subsequent appellate counsel, Dotson, was ineffective in failing to raise the wiretap issue in light of *United States v. Perez-Valencia*, 727 F.3d 852 (9th Cir. 2013), a Ninth Circuit decision rendered after Hernandez was convicted but before he was sentenced. In *Perez-Valencia*, the Ninth Circuit ruled that, under California Penal Code § 629.50, only the district attorney, or the person designated to act as the district attorney in all respects in the district attorney's absence, could apply for a wiretap. *Id.* at 855 ("We hold . . . that 'the' attorney designated to act in the district attorney's absence--as § 629.50 specifies--must be acting in the district attorney's absence not just as an assistant district attorney designated with the limited authority to apply for a wiretap order, but as an

assistant district attorney duly designated to act for all purposes as the district attorney of the political subdivision in question.").

The record in this case does not conclusively establish that the person who applied for the California wiretap at issue was designated to act as the district attorney for all purposes when he or she was unavailable. *See* ECF No. 312-5 (listing four assistant district attorneys authorized to apply for wiretaps when the district attorney was unavailable). Even if the court assumes that Dotson's failure to raise the issue fell below an objective standard of reasonableness under prevailing professional norms, a determination that this court expressly declines to make, Hernandez shows no prejudice arising out of Dotson's failure to raise the wiretap issue on appeal.[1]

The California wiretap evidence does not appear to have been introduced as evidence in Hernandez's second trial. *See* Opposition to § 2255 Motion at 24-25, ECF No. 622, PageID #s

---

[1] Of course, the court is not here ruling that Dotson's failure to raise the issue on appeal fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). Dotson might have been justified in choosing not to raise the issue on appeal on the ground that the issue would not succeed. *See Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (stating that appellate counsel was not ineffective for failing to raise an issue that was not grounds for reversal).

4

11116-17 ("It was reasonable for Hernandez's counsel not to raise this claim on direct appeal, particularly given that the Government did not even make use of the challenged state wiretaps during his second trial."); Hernandez's Memorandum in Support of § 2255 Motion at 85, ECF No. 614-2, PageID #s 10846 ("The government . . . shocked the entire proceedings when it cited that, 'it was not going to introduce any of the intercepted calls from the wire tap'"). Nor does Hernandez clearly articulate what evidence he thinks was obtained as a result of the allegedly improper wiretap.

It appears that Hernandez is instead arguing that he was prejudiced because, but for the state wiretap evidence, he would not have been imprisoned for the state crimes and, without that imprisonment, he would not have made any phone calls that could have formed the basis of identification of his voice by either Rene Zendejas or Officer Richardo Cerna. This argument is not persuasive. While the record is not clear as to whether Hernandez might have been incarcerated or have made those phone calls even if the wiretaps had not occurred, Hernandez fails to show that either Zendejas or Cerna would have been unable to identify Hernandez's voice on a different recording without having listened to the prison's recorded calls.

Zendejas knew Hernandez well. Even if Zendejas had not heard Hernandez's voice in prison phone conversations, Zendejas may well have been able to identify Hernandez's voice. Zendejas testified, for example, that he had known Hernandez since they were 13 or 14 years old. *See* Transcript of Proceeding (Jan. 10, 2012) at 3, ECF No. 371, PageID # 4640. According to Zendejas, they saw each other two or three times a week growing up and their relationship continued into adulthood. *Id.* at 13, PageID # 4650. Zendejas also testified that Hernandez taught Zendejas how to put drugs in the drive shaft of a car that was to be driven from Mexico to the United States. *Id.* at 22, PageID # 4659. Zendejas described how, for several years, he and Hernandez were partners in a methamphetamine distribution scheme. *Id.* at 26-27, PageID # 4663-64. When Zendejas testified that he heard Hernandez's voice on recordings, he also noted that it was the same voice that he had heard "when I used to talk to him before over the phone." Partial Transcript of Proceedings (Jan. 10, 2012) at 65, ECF No. 466, PageID # 5851. Given Zendejas's lengthy relationship with Hernandez, Zendejas could likely have identified Hernandez's voice without having heard the phone calls recorded in prison.

Hernandez is also unpersuasive in arguing that, but for the prison phone calls, Cerna would have been unable to identify his voice. Cerna originally arrested Hernandez for public intoxication. ECF No. 551 at 2-45, PageID # 8524. Cerna testified that Hernandez spoke with a "distinct tone." *Id.* at 2-50, PageID # 8529; *id.* at 2-71, PageID # 8550. Cerna explained that the distinctive tone Hernandez used when speaking to Cerna during their initial contact left a lasting association in Cerna's mind of that tone with Hernandez. ECF No. 551 at 2-38, PageID # 8517. The reason the sound of Hernandez's voice was so memorable was that Hernandez told Cerna at the time of the arrest that Hernandez was part of the Mexican Mafia. *Id.* at 2-42, PageID # 8521. Hernandez also used the words, "guey" and "ey" a lot while speaking, although those terms are common. *Id.* at 2-47, PageID # 8526. Cerna also recalled that Hernandez mumbled when he spoke. *Id.* at 2-72, PageID # 8551. While Hernandez may have been "stuttering" and "disoriented" during Cerna's initial contact with Hernandez, *id.* at 2-46, PageID # 8525, that goes only to the weight of Cerna's identification. Given Cerna's recollection about Hernandez's tone and mannerisms, Cerna probably could have identified Hernandez's voice even had the prison tapes been unavailable.

7

Because Hernandez fails to show any prejudice arising out of Dotson's allegedly ineffective conduct, Hernandez fails to establish entitlement to relief. *see Strickland*, 466 U.S. at 687 (ineffective assistance of counsel requires proof that counsel's deficient performance prejudiced defense).

**III. CONCLUSION.**

On December 31, 2018, this court denied most of Hernandez's § 2255 motion, denied Hernandez's request for an evidentiary hearing, and declined to issue a certificate of appealability. The court told Hernandez that he needed to identify any issue that the court failed to address no later than January 31, 2019. The court warned Hernandez that any issue not so identified would be deemed waived. *See* ECF No. 630.

On January 11, 2019, Hernandez said this court had failed to address three issues; he also complained about the lack of an evidentiary hearing. *See* ECF No. 631.

On January 30, 2019, the court denied Hernandez's § 2255 motion with respect to two of the three identified issues, asking for supplemental briefing with respect to the third identified issue--whether appellate counsel had been ineffective in failing to raise the state wiretap issue on appeal. The court continued to deny Hernandez's request for an evidentiary hearing

and continued to decline to issue Hernandez a certificate of appealability.  *See* ECF No. 634.

The court now denies Hernandez's § 2255 motion with respect to the last remaining issue, determining that he has failed to demonstrate entitlement to relief on the ground that his appellate counsel was ineffective in failing to raise the state wiretap issue on appeal.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  The court continues to deny Hernandez's request for an evidentiary hearing and continues to decline to issue Hernandez a certificate of appealability, as reasonable jurists would not find this court's assessment of Hernandez's claims debatable or wrong.

The Clerk of Court is directed to enter judgment in favor of the United States and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 29, 2019.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States of America v. Gouveia, Crim. No. 08-00739 SOM (01), Civ. No. 18-00287 SOM/RT; SECOND SUPPLEMENT TO ORDER DENYING PETITION UNDER 28 U.S.C. § 2255, DENYING REQUEST FOR AN EVIDENTIARY HEARING, AND DENYING CERTIFICATE OF APPEALABILITY